UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
_____

**GEORGE H. MECOUCH, JR.,**

                      **Plaintiff,**

**v.**                                                **Case No. 15-cv-1138**

**PENSION BOARD OF THE EMPLOYEES'
RETIREMENT SYSTEM OF THE COUNTY
OF MILWAUKEE, et al.,**

                      **Defendants.**
_____

## DECISION AND ORDER

      Plaintiff George Mecouch brings this action against his former employer, Milwaukee County ("the County"), and the entities which administer the County's employee retirement plan, The Employees' Retirement System ("ERS") and the Pension Board ("the Board"), challenging their decision to revoke his pension benefits. Plaintiff brings numerous federal claims under 42 U.S.C. § 1983 as well as a claim for state law certiorari review and a takings claim under the Wisconsin constitution. ERS and the Board bring a motion to dismiss under Fed. R. Civ. P. 12(b)(6). The County joins that motion and brings its own 12(b)(6) motion. I now address both motions to dismiss.

### I. Background

      Plaintiff worked for the County in various capacities between 1978 and 1990. Between 1978 and 1982, plaintiff had the option to voluntarily enroll in the ERS but did not do so. Because he did not take advantage of the optional enrollment, those four years were not counted toward the number of years he needed for his retirement benefits to vest. In 1982, he obtained a new position, and his enrollment in ERS

became mandatory and automatic. In 1990, plaintiff took advantage of a longstanding ERS policy known as the buy-in policy which allowed him purchased service credit for this four-year period in order to fully vest his retirement benefits. Plaintiff submitted his written request to purchase the additional service credit on August 15, 1990, two days before resigning from County employment. On September 21, 1992, the ERS notified plaintiff that his request to purchase service credit had been granted. Plaintiff paid the required amount and was notified that his retirement benefits were fully vested.

In 2011, plaintiff turned sixty and began receiving pension benefit payments from the ERS. However, in April 2014, the ERS informed plaintiff that his service credit purchase was not allowed under County ordinances and that he was not entitled to the vested pension benefits he had been receiving. As of July 1, 2014, the ERS discontinued payments and demanded that plaintiff repay the benefits he had already received, totaling more than $50,000.

Plaintiff appealed the ERS's determination to the Board under ERS Rule 1016, an administrative rule which governs the process for appealing an ERS decision. His appeal was heard at a Board meeting on February 18, 2015. At the hearing, plaintiff was represented by counsel, who made a presentation to the Board. On February 27, the Board denied plaintiff's appeal and informed plaintiff that he was entitled to seek judicial review of the decision.

Plaintiff was one of many County employees who were notified in 2014 that their purchase of service credit, which the ERS had approved, had actually been in violation of County ordinances. This was the result of an inquiry by the Internal Revenue Service ("IRS") in which the IRS discovered that the ERS was allowing the purchase of service

2

credit in violation of County ordinances and determined that this practice jeopardized the ERS's tax status. Compl. ¶ 88 (ECF No. 1-2). On February 17, 2015, the County adopted an ordinance which retroactively amended certain ERS rules in order to make many of the previously invalid service credit purchases valid, allowing many employees to keep their benefits. However, the ordinance did not cover 13 former County employees' service credit purchases, including plaintiff's, which according to defendants are still invalid under County ordinances.

## II. Discussion

To survive a Rule 12(b)(6) motion, plaintiff must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In construing plaintiff's complaint, I assume all factual allegations to be true and disregard statements that are conclusory. *Id.*

### A. Procedural Due Process Claim

Plaintiff's first § 1983 claim is that defendants violated his procedural due process rights by (1) failing to give plaintiff an opportunity to be heard on a particular issue, (2) failing to provide a neutral decision maker based on the County attorney's participation in his hearing, and (3) failing to timely and adequately inform him of the reasons for its decision and his right to appeal.[1] At this point, the parties do not dispute

---

[1] Plaintiff's complaint also alleges that "[t]he procedures provided by ERS Rule 1016 for administrative review of determinations related to retirement benefits are inadequate to afford due process of law." Compl. ¶ 98. This allegation is conclusory and unsupported by any factual allegations; therefore I may not consider it. *Iqbal*, 556 U.S. at 678. Additionally, ERS Rule 1016 entitles an employee whose request for benefits has been

3

whether plaintiff has a protected property interest; thus, I will assume this and move on to determining what process was due. *See Leavell v. Ill. Dep't of Nat. Res.*, 600 F.3d 798, 804 (7th Cir. 2010). A procedural due process violation "actionable under § 1983 is not complete when the deprivation [of a protected interest] occurs; it is not complete unless and until the State fails to provide due process." *Zinermon v. Burch*, 494 U.S. 113, 126 (1990). Thus, "failing to avail oneself of adequate state court remedies . . . is a substantive failure that defeats the cause of action." *Leavell*, 600 F.3d at 807.

In this case, plaintiff has not availed himself of all available state remedies because state certiorari review is still available. Further, he does not allege the inadequacy of certiorari review; in fact, he brings a claim for certiorari review along with his federal claims. Plaintiff argues that state certiorari review should not preclude his procedural due process claim because the standard of review is not de novo but provides no support for the assertion that a discretionary standard of review renders a state procedural remedy inadequate. Additionally, state certiorari review includes review of whether the Board "acted according to the law," which means whether it followed "the common-law concepts of due process and fair play." *Marris v. City of Cedarburg*, 176

---

denied by ERS to an appeal to the Board. As part of the appeals process, the employee may submit materials to the Board, review documents in the Board's control, and attend the meeting at which the appeal is reviewed. Rule 1016(a). The employee is entitled to a written decision explaining the reasons for the decision, Rule 1016(b). These written procedures are sufficient to satisfy due process. *See Kauth v. Hartford Ins. Co. of Ill.*, 852 F.2d 951, 955–56 (7th Cir. 1988) (finding no cognizable procedural due process claim where state statute provided plaintiff with, and plaintiff received, a post-deprivation hearing). Further, plaintiff does not allege anywhere that these procedures, in and of themselves, were inadequate; rather, his claims focus on how the procedures afforded in his particular case did not comply with these provisions. *See Leavell v. Ill. Dep't of Nat. Res.*, 600 F.3d 798, 804–05 (7th Cir. 2010) (distinguishing between procedural due process claims based on state procedures and claims based on random, unauthorized acts).

Wis. 2d 14, 24 (1993) (internal quotations and citations omitted). Thus, certiorari review will give plaintiff an opportunity to raise his due process arguments, giving the state courts an opportunity to correct any procedural errors and remand the matter for a new hearing. Certiorari review, therefore, is adequate to address plaintiff's procedural concerns, and thus plaintiff was required to exhaust that state remedy before bringing a federal procedural due process claim. Because he has not done so, he has not adequately alleged that he has been deprived of a property interest without due process of law, and I will dismiss his procedural due process claim.

**B. Equal Protection Claim**

Plaintiff also brings an equal protection claim against defendants, alleging that they intentionally treated him differently by not including him in the 2015 County ordinance which retroactively made most employees' previously improper service credit purchases valid. The nature of plaintiff's claim is unclear; in his brief in opposition, he refers to it as a class-of-one claim, which would require plaintiff to allege that he was intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment. *D.B. ex rel. Kurtis v. Kopp*, 725 F.3d 681, 685 (7th Cir. 2013). However, his complaint seems to allege a more traditional equal protection claim, that defendants intentionally treated a group of individuals, namely he and the 12 other individuals whose service credit purchases were not retroactively made valid by the 2015 County ordinance, differently with no rational basis. *See F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993) (discussing the rational basis standard of review for legislative classifications which neither infringe on fundamental constitutional rights nor involve a suspect classification). Regardless of the nature of his equal

5

protection claim, plaintiff must plead factual allegations to support the inference that defendants acted with discriminatory intent and that no rational basis existed for the differing treatment. S*ee Shango v. Jurich*, 681 F.2d 1091, 1103–05 (7th Cir. 1982); *Kopp*, 725 F.3d at 685.

First, I note that plaintiff's allegations of discriminatory intent are conclusory. Plaintiff argues that his allegations of the timing of the 2015 ordinance, which occurred while his Board appeal was pending, is suspicious and supports an inference of intentional discrimination, *see Troupe v. May Dep't Stores Co.*, 20 F.3d 734 (7th Cir. 1994), but I fail to see how the fact that the ordinance and plaintiff's appeal occurred simultaneously somehow renders the timing of the ordinance suspicious given the fact that the ordinance did not address his service credit purchase and therefore had no effect on his appeal. Plaintiff also argues that the fact that he was excluded from the 2015 ordinance is evidence in and of itself of discriminatory intent, *see Locke v. Haessig*, 788 F.3d 662, 671 (7th Cir. 2015), but without more, this argument is not persuasive. *See id.* at 671–72 (discussing other evidence, aside from just selective inaction, which would allow a jury to infer discriminatory intent).

The larger problem with plaintiff's equal protection claim is that the complaint does not allege sufficient facts to support the inference that defendants acted irrationally in passing the 2015 ordinance. Government entities are presumed to act rationally, and plaintiff must plead sufficient facts "to overcome the presumption of rationality that applies to government classifications." *Kopp*, 725 F.3d at 686 (internal citation and quotations omitted); *see also Beach Commc'ns, Inc.*, 508 U.S. at 315 ("[A] classification in a statute . . . comes to us bearing a strong presumption of validity.").

6

Plaintiff's complaint does not do this. Rather, plaintiff's complaint, along with documents attached to the complaint, reveals a rational basis. The complaint references and attaches the County resolution proposing the amendments, which states that the purpose of the amendment was to correct certain operational errors, including where defendants improperly permitted employees (1) to purchase service credits after the two-year payment deadline, (2) to purchase service credits in excess of the limits on annual contributions, and (3) to purchase service credits using deferred, pre-tax earnings. Compl. Ex. K (ECF No. 1-2). The resolution goes on to state that the retroactive application of these amendments for the employees affected by these particular operational errors was part of a resolution reached between defendants and the IRS in order to preserve defendants' tax status. *Id.* Further, the complaint specifically alleges that defendants passed the 2015 ordinance to "protect[] against a possible Internal Revenue Service . . . determination disqualifying the Pension Plan" and against the "multi-million dollar tax liability" such a determination would have imposed. Compl. ¶¶ 76, 81. The language of the resolution, coupled with these allegations, reveal a rational basis for 2015 ordinance: an attempt to work with the IRS and preserve their tax status by addressing certain categories of operational errors. The operational error affecting plaintiff's service credit purchase did not fall into any of these categories, and thus he did not benefit from the ordinance, but delineating categories of employees based on an agreement with the IRS in an effort to avoid tax liability is certainly rational.[2] For these reasons, I will dismiss plaintiff's equal protection claim. *See*

---

[2] It also appears that plaintiff cannot show that he is similarly situated with the employees whose service credit purchases were addressed by the 2015 ordinance because their service credit purchases fell into one of these three categories while

7

Case 2:15-cv-01138-LA   Filed 04/21/16   Page 7 of 12   Document 19

*Kopp*, 725 F.3d at 686 (concluding that a plaintiff can plead himself out of court by alleging facts in a complaint which reveal a rational basis for the government action).

**C. Takings Claim**

Plaintiff also alleges that defendants violated the Fifth Amendment by taking his property without just compensation. "The Fifth Amendment does not proscribe the taking of property; it proscribes taking without just compensation." *Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 194 (1985). Before bringing a federal takings claim, a plaintiff must first have received a final decision regarding his property from the relevant government entity and have exhausted state court remedies for receiving compensation for the taking. *Forseth v. Vill. of Sussex*, 199 F.3d 363, 372 (7th Cir. 2000) (citing *Williamson County*, 473 U.S. at 186–87, 194). Although these requirements were first implemented in the context of land use disputes, the Seventh Circuit has applied *Williamson County*'s final decision and exhaustion requirements to takings claims involving pension benefits. *See Underwood v. City of Chi.*, 779 F.3d 461, 464 (7th Cir. 2015).

In this case, it is clear that the Board's denial of plaintiff's appeal was a final decision. *See* ERS Rule 1016(c) ("The board's decision on any such matters, including with respect to a member's request for a review, shall be final and binding."); Compl. Ex. J (ECF No. 1-2) (letter from ERS to plaintiff stating that "the Pension Board considers its denial of Mr. Mecouch's appeal to be its final decision in this matter"). However, plaintiff has not exhausted all of his available state court remedies for receiving compensation. While I agree with plaintiff that he is not required to exhaust his state certiorari review

---

plaintiff's did not. *Kopp*, 725 F.3d at 685 (listing "similarly situated" as an element of an equal protection claim).

8

claim because this is a claim for review and not compensation, *see Daniels v. Area Plan Comm'n of Allen Cty.*, 306 F.3d 445, 455 (7th Cir. 2002) (concluding that "state certiorari review is clearly not required by *Williamson County*" because such a process is merely one for review and not one for compensation), plaintiff is required to exhaust his takings claim under the Wisconsin constitution. Plaintiff's state law takings claim provides a financial remedy and therefore constitutes a state remedy for compensation. *See id.* at 455–56 (concluding that where a state remedy provides a "financial remedy" it must be exhausted). Thus, I will dismiss plaintiff's federal takings claim without prejudice as not ripe.

**D. Substantive Due Process Claim**

Plaintiff's final § 1983 claim is a substantive due process claim in which plaintiff alleges that defendants acted arbitrarily and capriciously in revoking his pension benefits. Generally, substantive due process protects fundamental rights, not state-created property rights. *Kauth v. Hartford Ins. Co. of Ill.*, 852 F.2d 951, 956–57 (7th Cir. 1988). "[T]he scope of substantive due process is very limited," especially where the protected right is a property right. *Tun v. Whitticker*, 398 F.3d 899, 902 (7th Cir. 2005). In order to state a substantive due process claim predicated on a deprived property interest, a plaintiff must allege "1) that the state's decision was arbitrary and irrational, and 2) that the state committed a separate constitutional violation or that state law remedies are inadequate." *Contreras v. City of Chi.*, 119 F.3d 1286, 1295 (7th Cir. 1997); *see also Lee v. City of Chi.*, 330 F.3d 456, 467 (7th Cir. 2003).

Here, plaintiff has not satisfied the second prong of his substantive due process claim. I have determined that plaintiff's other federal constitutional claims fail, and thus

plaintiff has not alleged a separate constitutional violation. *See Lee*, 330 F.3d at 467 (concluding that plaintiff failed to show a separate constitutional violation because the court concluded that plaintiff's other constitutional claim failed to state a claim). Further, plaintiff has brought a claim for state certiorari review and a takings claim under the Wisconsin constitution, indicating that there are adequate state law remedies available to redress any arbitrary or irrational conduct by defendants. *See id.* (concluding that plaintiff failed to show the inadequacy of state law remedies because he alleged pendant state law claims along with his substantive due process claim).

Additionally, plaintiff has failed to plead conduct which is arbitrary or irrational. Official conduct, even abhorrent conduct, only rises to the level of a constitutional violation where it is so egregious as to "shock the conscience." *Tun*, 398 F.3d at 902–03 (quoting *Rochin v. California*, 342 U.S. 165 (1952)); *see also Cty. of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998) (defining "arbitrary" and "conscience shocking"). Here, taking all inferences in plaintiff's favor, his complaint alleges that defendants erred by allowing current and former employees to purchase service credits in violation of County ordinances, and that when the mistakes were discovered and their tax status jeopardized, they took action to correct the mistakes, including informing the affected employees of the error, revoking pension benefits, and amending the ordinances. While the financial impact on plaintiff was significant and seemingly unfair, this is not conduct so egregious as to shock the conscience and therefore be considered arbitrary or irrational. *See, e.g.*, *Belcher v. Norton*, 497 F.3d 742, 756–57 (7th Cir. 2007) (concluding that a process which is "unfortunately clumsy and mishandled" nevertheless does not shock the conscience); *Bublitz v. Cottey*, 327 F.3d 485, 491 (7th Cir. 2003) ("It

10

is generally only *deliberate* action intended to harm another that is the type of conducted targeted by the Fourteenth Amendment: '[C]onduct *intended* to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level.") (quoting *Lewis*, 523 U.S. at 849)). For these reasons, I will dismiss plaintiff's substantive due process claim.

**E. State Law Claims**

Because I am dismissing all of plaintiff's federal claims, I will decline supplemental jurisdiction over plaintiff's remaining state law claims. *See* 28 U.S.C. § 1367(c); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) (stating that if federal claims are dismissed, a federal court should use its discretion and decline jurisdiction over the remaining state law claims). This case was originally removed from state court, and thus I will remand the case back to state court for consideration of plaintiff's remaining state law claims. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343 (1988) (permitting remand to state court where the case was originally removed from state court and all federal claims have been dismissed); *Purcell v. Bank of Am.*, 659 F.3d 622, 623 (7th Cir. 2011) ("Once the federal portion of a removed suit has been resolved, remand to state court is appropriate.").

**F. Milwaukee County's Motion**

Milwaukee County raises a separate issue in its motion to dismiss, namely that they are not proper defendants in this action because they did not play a role in the decision to revoke plaintiff's benefits. Because I have dismissed plaintiff's federal claims against all defendants on other grounds, I need not address whether Milwaukee County is a proper defendant in those claims. I will refrain from deciding whether Milwaukee

11

County is a proper defendant in plaintiff's remaining state law claims because I am relinquishing jurisdiction and will deny the County's motion.

### III. Conclusion

**THEREFORE, IT IS ORDERED** that defendant Milwaukee County's motion to dismiss (ECF No. 4) is **DENIED**.

**IT IS FURTHER ORDERED** that defendants' motion to dismiss (ECF No. 7) is **GRANTED**. The Clerk shall enter judgment accordingly.

**IT IS FURTHER ORDERED** that this case shall be remanded to state court for consideration of plaintiff's state law claims against defendants.

Dated at Milwaukee, Wisconsin, this 21st day of April, 2016.

s/ Lynn Adelman
_____
LYNN ADELMAN
District Judge